**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PERFORMANCE FIBERS, INC., <br> 13620 Reese Boulevard <br> Suite 400 <br> Huntersville, NC 28078 <br><br><br> *Plaintiff*, <br><br> v. <br><br> ACE AMERICAN INSURANCE <br> COMPANY, <br> 436 Walnut Street <br> Philadelphia, PA 19106 <br><br> *Defendant*. | CIVIL ACTION NO. <br><br><br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Performance Fibers, Inc. ("Performance Fibers"), by and through its undersigned counsel, hereby files this Complaint against Defendant ACE American Insurance Company ("ACE"), and alleges upon knowledge as to its own acts and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is an insurance-coverage dispute brought by Performance Fibers as the "Insured" under a first-party property insurance policy issued by ACE (the "Policy"), Policy Number PGL N05099869, Policy Period December 21, 2010 to December 21, 2011. *See* Policy and accompanying Declarations and Endorsements attached hereto as Ex. A. The Policy provides coverage for, among other things, losses incurred when property damage prevents a supplier from supplying goods to Performance Fibers. The historic tornado and storm events of April 2011 caused property damage that prevented one of Performance Fibers' suppliers from providing a raw material that Performance

Fibers needed to manufacture its products.  The supplier's inability to provide this raw material resulted in losses to Performance Fibers, and such losses are covered under the Policy.  ACE has refused to pay the full amount of covered losses.

2.      Performance Fibers seeks money damages and declaratory relief.  Performance Fibers asserts the following: (1) Breach of Contract; and (2) Claim for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

3.      Performance Fibers is an entity incorporated under the laws of the State of Delaware, with its principal place of business in North Carolina.

4.      Upon information and belief, ACE is an insurance company incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court has personal jurisdiction over ACE because, within the time period relevant herein, ACE was licensed to do business in Pennsylvania and has in fact transacted business in Pennsylvania.  ACE issued an insurance policy to Performance Fibers from an ACE location in Philadelphia, Pennsylvania.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c).

## THE POLICY

7.      Performance Fibers is an "Insured" under the Policy issued by ACE.  The Policy is a first-party property policy that provides insurance coverage for, among other things, the "Insured's"

2

interest in real and personal property, loss resulting from interruption of business, lost rental income, lost income under royalty or licensing agreements, and other losses and damages that the Insured suffers, subject to the terms and conditions of the Policy.

8.      A section of the Policy sets forth the Policy's various coverages.  The "Time Element Extensions" coverage section identifies several types of coverage, including "Contingent Time Element" insurance.  The "Contingent Time Element" provision states as follows:

**F.  <u>Time Element Extensions</u>**

(1)      This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against, to:

* * *

(b) Contingent Time Element:  property that wholly or partially prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that wholly or partially prevents any direct or indirect receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the world;

Ex. A, Policy at § 7(F)(1) (p. 13-14 of Policy).

9.      The "Contingent Time Element" provision refers in the lead-in language to "causes of loss insured against," which include perils that the policy insures against such as "all risk of direct physical loss of or damage to property."  Ex. A, Policy at § 7(F)(1) (p. 13 of Policy) and § 9 (p. 23 of Policy), amended by Endorsement No. 4 at no. 7 (p. 6 of Endorsement 4).

10.      The Policy also provides coverage for "Loss Adjustment Expenses," which include expenses that Performance Fibers incurs for preparing and certifying details of a claim resulting from a loss payable under the Policy.  Ex. A, Policy at § 8(D) (p. 20 of Policy).

11.     The Policy's Partial Payment provision obligates ACE to issue partial payment of a claim for an amount of not less than "the undisputed estimate of loss or damage between the Insured and [ACE]."  Ex. A, Policy at § 28 (p. 33 of Policy).

12.     In the event Performance Fibers and ACE disagree as to the meaning of any terms or provisions in the Policy, and an ambiguity in the Policy exists, the Policy must be read in a manner that favors Performance Fibers as the Insured.

## THE LOSS

13.     Performance Fibers manufactures polyester fibers and fabrics and has five facilities in North America: (i) Moncure Facility in Snow Hill, North Carolina; (ii) Salisbury/Charlotte Facility in Salisbury, North Carolina; (iii) Shelby Facility in Shelby, North Carolina; (iv) Winnsboro Facility in Winnsboro, North Carolina; and (v) Queretaro Facility in Queretaro, Mexico.

14.     Performance Fibers' North American facilities require a raw material called purified terephthalic acid, or "PTA," in order to manufacture polyester products.  In and around April of 2011, Performance Fibers purchased PTA for its North American facilities principally from BP Amoco Chemical Company ("BP").  BP was Performance Fibers' only U.S. supplier of PTA, and BP supplied Performance Fibers with about 70% of the PTA that Performance Fibers purchased for its North American facilities.

15.     BP is the largest manufacturer of PTA in the world, with manufacturing facilities in the U.S., Belgium, Brazil, Korea, Indonesia, China, Malaysia, and Taiwan.  These facilities supply over 20% of the merchant PTA used in the world today.  In around April 2011, BP had two PTA production facilities in the U.S., including a facility in Cooper River, South Carolina (the "Cooper River Facility") and a facility in Decatur, Alabama (the "Decatur Facility").

16.     Around January 2006, BP and Performance Fibers entered into a written PTA Supply Agreement ("Original PTA Supply Agreement"), amended in part thereafter, under which BP agreed to sell and deliver PTA to Performance Fibers.  *See* Original PTA Supply Agreement and subsequent amendments (collectively, "PTA Supply Agreement"), attached hereto as Ex. B.[1]

17.     The PTA Supply Agreement provided for BP to sell and deliver PTA "from origin" to Performance Fibers' manufacturing facilities, without specifying the precise "origin" of any PTA that would be supplied to any particular Performance Fibers' manufacturing facility.  *See* Ex. B, Original PTA Supply Agreement at Article 5(A) ("Delivery Terms").

18.     The PTA Supply Agreement contained a "Force Majeure" provision which relieved BP of liability for failure to supply PTA if such failure was occasioned by "acts of God . . . floods, or hurricanes, fire, explosion, or any other cause or causes of any kind of character beyond the control of the party delayed or failing to perform, which by the exercise of reasonable diligence, the party was unable to prevent."  *See* Ex. B, Original PTA Supply Agreement at Article 10 ("Force Majeure").

19.     In order for BP's supply obligations to be suspended under the Force Majeure provision, BP was required to give Performance Fibers notice of the Force Majeure.  *See* Ex. B, Original PTA Supply Agreement at Article 10(B) ("Force Majeure").   After providing such notice, BP's obligations to supply PTA are suspended "so far as they are affected by such Force Majeure" and "during the continuance of any inability so caused."  *See* Ex. B, Original PTA Supply Agreement at Article 10(B) ("Force Majeure").

---

[1]     The version of the PTA Supply Agreement attached hereto as Exhibit B is redacted to remove pricing and payment information that is sensitive and proprietary to BP.  The redacted information is non-material to this lawsuit. Nonetheless, Performance Fibers is willing to file an unredacted version of the PTA Supply Agreement under seal.

20.     The PTA Supply Agreement further provided that if BP's PTA manufacturing facilities were limited by Force Majeure, BP may apportion its available supply of PTA among all BP's purchasers on an equitable basis. *See* Ex. B, Original PTA Supply Agreement at Article 10(C) ("Force Majeure").

21.     The tornado outbreak of April 25–28, 2011 was the largest single-system tornado outbreak ever recorded. It also was the most destructive and deadliest in modern history, with tornados having destroyed portions of Alabama, Arkansas, Georgia, Mississippi, Tennessee, Virginia, and other areas throughout the southern and eastern United States. The worst tornado activity occurred on April 27, 2011, which itself was the single worst tornado day in American history.

22.     On April 27, 2011, a tornado, storm, or other peril damaged or destroyed property and caused BP's Decatur, Alabama manufacturing facility to shut down. At that time, BP's other PTA manufacturing location at Cooper River was undergoing a planned maintenance outage, and the Cooper River Facility could not be restarted.

23.     The April 27, 2011 events prevented BP from supplying the amount of PTA that Performance Fibers required for its manufacturing requirements, sales requirements, and pending/future orders. BP declared Force Majeure pursuant to the PTA Supply Agreement, and shortly thereafter exercised its right to apportion its available supply of PTA to Performance Fibers and others.

24.     BP's declaration of Force Majeure was due to BP's inability to supply PTA, which was the direct result of the damage or destruction of April 27, 2011. Performance Fibers reserves its rights, however, to amend this complaint to identify any additional information relating BP's inability to supply PTA to Performance Fibers.

25.     As a direct result of BP's inability to supply Performance Fibers' requirements for PTA after April 27, 2011, Performance Fibers suffered economic losses, including lost sales and profits and other losses and damages.

### THE POLICY COVERS PERFORMANCE FIBERS' LOSSES RESULTING FROM THE APRIL 27, 2011 EVENT

26.     The Policy's Contingent Time Element coverage insures Performance Fibers against "loss resulting from damage to" property.  The events of and surrounding April 27, 2011 caused the requisite "damage" to property.

27.     The Policy's Contingent Time Element coverage is triggered where the damage to property then "wholly or partially prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services."  Ex. A, Policy at § 7(F) (p. 14 of Policy). These requirements were satisfied because (1) the "direct or indirect supplier" of Performance Fibers was BP; and (2) the April 27, 2011 damage to property "wholly or partially prevent[ed]" BP from rendering PTA to Performance Fibers.  Thus, Performance Fibers' losses that resulted from BP's inability to supply PTA are covered under the Policy.

28.     Performance Fibers has satisfied, shall be deemed to have satisfied, or has been or shall be relieved from satisfying, by operation of law or by virtue of ACE's conduct, all terms and conditions of the Policy, including without limitation payment of premiums, notice, and proof of loss, and is entitled to the full benefit of the insurance provided by the Policy.

29.     An actual controversy exists between Performance Fibers and ACE regarding the rights and obligations of ACE to pay all of the loss that Performance Fibers has suffered.

**FIRST CLAIM FOR RELIEF**
*(Breach of Contract)*

30.     Performance Fibers incorporates by reference paragraphs 1 through 29 as though fully set forth herein.

31.     The Policy provides coverage for all loss that Performance Fibers suffers as a result of damage to property that prevented BP from supplying PTA to Performance Fibers.

32.     The April 27, 2011 damage to property prevented BP from supplying PTA to Performance Fibers.  The property damage affected BP's ability to supply PTA, whether from the Cooper River Facility, the Decatur Facility, or both.

33.     ACE has refused to pay Performance Fibers' losses allegedly due to PTA that BP could not supply from the Cooper River Facility, ostensibly because the Cooper River Facility did not suffer physical damage at its location.  ACE also has improperly calculated any applicable deductibles under the Policy, resulting in an under-calculation of the amount of Performance Fibers' amount of insured loss under the Policy.

34.     ACE's refusal to pay the proper amount of Performance Fibers' losses constitutes a breach of the Policy.  Performance Fibers has been damaged as a direct result of ACE's breaches in an amount to be determined at trial, but such amount totals in the millions of dollars.

35.     Performance Fibers is entitled to all direct, indirect, consequential, special, compensatory and other damages resulting from ACE's breach of contract.

**SECOND CLAIM FOR RELIEF**
*(Declaratory Judgment)*

36.     Performance Fibers incorporates by reference paragraphs 1 through 35 as though fully set forth herein.

37.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Performance Fibers and ACE may have further disagreements concerning the interpretation of the Time Element Extensions coverage in the Policy and the extent of Performance Fibers' loss that is covered under such coverage provisions.  Accordingly, Performance Fibers seeks a declaration that ACE is obligated, pursuant to the terms of its insurance contract, to pay otherwise covered loss that results from property damage that prevents a supplier from rendering its goods and/or services, and the Policy does not restrict coverage to only those losses attributable to a location that itself has been physically damaged.

38.     Performance Fibers requests that this Court declare and order as follows:

(a)     That the Policy insures Performance Fibers' losses that resulted from BP's inability to supply PTA after the April 27, 2011 events;

(b)     That the Policy insures loss that results from property damage that prevents a supplier from rendering its goods and/or services, and the Policy does not limit coverage to property damage at any particular location of the supplier;

(c)     That the Policy does not restrict coverage for Performance Fibers' losses to only those losses that resulted from BP's inability to render PTA from the Decatur Facility specifically;

(d)     That if Performance Fibers' losses are covered under the Time Element Extensions and one or more other coverages provided by the Policy, then only one deductible shall apply, and ACE is not entitled to apply multiple deductibles under multiple coverages.

39.     The foregoing declarations are based on the language of the Policy that is the subject of this action.

40.     An actual controversy exists between Performance Fibers and ACE regarding the rights and obligations of the parties.

41.     The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

## PRAYER FOR RELIEF

**WHEREFORE**, Performance Fibers respectfully requests judgment as follows:

A. With respect to the First Claim for Relief (Breach of Contract):

1. Actual money damages sustained as a result of ACE's breach of the Policy, in an amount to be determined at trial;

2. Interest as provided by law; and

3. Attorneys' fees and costs as permitted under the Policy or under applicable law.

B. With respect to the Second Claim for Relief (Declaratory Judgment):

1. A declaration and order stating as follows:

i. That the Policy insures Performance Fibers' losses that resulted from BP's inability to supply PTA after the April 27, 2011 events;

ii. That the Policy insures loss that results from property damage that prevents a supplier from rendering its goods and/or services, and the Policy does not limit coverage to property damage at a particular location of the supplier;

iii. That the Policy does not restrict coverage for Performance Fibers' losses to only those losses that resulted from BP's inability to render PTA from the Decatur Facility;

10

    iv.   That if Performance Fibers' losses are covered under the Time Element Extensions and one or more other coverages provided by the Policy, then only one deductible shall apply, and ACE is not entitled to apply multiple deductibles under multiple coverages.

C.  Such orders, including injunctive relief, as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and

D.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Performance Fibers hereby request a trial by jury on all issues so triable.

Paul A. Zevnik (PA ID No. 43453)
202.739.5755
pzevnik@morganlewis.com
Lauren K. Silvestri (PA ID No. 208351)
215.963.4634
lsilvestri@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921

Dated:  August 23, 2012        *Attorneys for Plaintiff Performance Fibers, Inc.*